## Commonwealth *v.* Walter E. Goodwin, Appellant.

*Criminal law—Murder—Confession—Evidence.*

A confession procured by artifice is not for that reason inadmissible unless the artifice was calculated to produce an untrue confession.

A man and woman charged with murder were confined in the same prison. The man voluntarily requested an interview with the woman. The sheriff granted the request, and stationed two deputies in such a position that they could hear what was said. No other artifice or constraint was used. *Held*, that the testimony of the woman and the two deputies was properly admissible as to the statements made by the prisoner at the interview.

A letter written by a prisoner charged with murder, and voluntarily given by him to the sheriff to be delivered to another person, is admissible in evidence against the prisoner.

Argued May 9, 1898. Appeal, No. 149, Jan. T., 1898, by defendant, from judgment of O. & T., Tioga Co., Sept. T., 1897,

No. 1, on verdict of guilty of murder in the first degree. Before Sterrett, C. J., Green, Mitchell, Dean and Fell, JJ. Affirmed.

Indictment for murder. Before Mitchell, P. J.

At the trial it appeared that the prisoner was indicted for murdering his wife. A young girl named Gertrude Taylor was charged with complicity in the crime, and prior to the trial was confined in the same jail with the prisoner. Owing to some statements made by the girl and published in the newspaper, the prisoner requested the sheriff to allow him to have an interview with the girl. The request was granted, but prior to the interview the sheriff stationed two deputies in such a position that they could hear what was said. The statements made by the prisoner in conversation with the girl tended strongly to incriminate him. Gertrude Taylor and the two deputies were called as witnesses for the commonwealth to prove the statements made by the prisoner at the interview. After they had testified the court refused to strike out their evidence. [1, 2]

After the interview above referred to, the prisoner voluntarily requested the sheriff to deliver a letter which he had written to Gertrude Taylor. Under objection and exception this letter was admitted in evidence. [3]

The letter is as follows :

" Dear Gertie : I saw my lawyer to-day and he said if you would swear that it was five minutes after eleven when we left town Friday night that everything would be all right.

" Now don't fail to swear to this, will you, and stick to it too. And don't say that you crossed the Mansfield bridge either.

" When they ask you if you crossed it you say I don't remember of crossing any bridge that was so long as the bridge we crossed Thursday night, and stick to it, and don't let them catch you. And don't let anyone know about our talk the other night. He was so good to work us together that we don't want to give him away for anything, now be sure you don't. You touch a match to this as soon as you read it if you can read it at all. I wrote it on my knee so excuse poor writing. Write and tell me all about this, when he gave it to you and all about it. Be sure you seal your letter good and that mine is sealed when you get it, and tell me whether you think it has been opened or not.

" Now when it comes to court you must deny that about seeing a revolver that night, for if you tell that it will give it all away, and you know if you give that away we are both in the soup. They will ask you if you saw me have a revolver that night at all, and you will answer No.

" What you have sworn to doesn't amount to anything, my lawyer said so and he must know, it is what you swear to before grand jury is what is going to count, they are not mistrusting you so you can · swear to what you please, I am depending on you. ·Now don't go back on me, for if you do I will have to give you away and that will let us in the soup as well as that other fellow, see ha, ha, ha, and stick to what I said about being under those trees up above Packer's that is what I told my lawyer and that is what I have got to stick to, and another thing I want you to say and that is this, you must say there was a lot of people on the green when we went up by, and you must say I left you a moment before we went up under the trees. If they ask you about where I went you say he went towards the Wilcox House. Will you, now be sure, because I told my lawyer I left you a minute and went over to the Wilcox House to the water-closet and a man saw me there and spoke to me. Now don't say anything about this only that I left you a minute and then came back and we went up together under the trees, if they ask you what time it was when you were under the trees you say you don't know. Now you say we didn't drive near as far as we did the night before, and you must not say that I had a date with anyone for that will give me away. I have told all of them that I didn't have a date with anyone, and if you give it away it knocks it all in head. Now don't let them scare you in any way for they can't touch you, no matter what you say, and don't say very much to the District Attorney Dunsmore don't let him work you up against me and you stick to the time 11: 5, and you say that you looked at my watch and saw for yourself and you describe the watch if they ask you, you know it was a ladies gold watch.

" Burn this up as soon as you understand it thoroughly, may be I will get another chance to write and if I do you bet I will take it. Well good by for this time.

" From you know

" Who.

" Write as soon as you get this, be sure you burn this up don't let any person see it.

" Well good by it is to dark to write more.    Remember what I have said."

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions.

*David Cameron* and *Jerome B. Niles,* for appellant.—Confessions of a prisoner extorted by pain, or made under the influence of hope or fear, are not admissible in evidence against him: Hector v. The State, 2 Missouri, 166 ; State v. Guild, 5 Halsted, 163 ; Com. v. Knapp, 9 Pickering, 496.

*George W. Merrick,* of *Merrick & Young,* with him *Andrew B. Dunsmore,* for appellee.—Legal imprisonment does not operate to exclude a confession made during its continuance, when no threats or promises are used: Wharton's Criminal Evidence (9th ed.), sec. 661 ; Com v. Smith, 119 Mass. 305.

A confession is admissible when voluntarily made to a public officer, even though the prisoner be in the custody of such officer, unless the confession be in some sense elicited by threats or promises : Com. v. Harman, 4 Pa. 269 ; People v. Murphy, 63 N. Y. 590 ; Balbo v. People, 80 N. Y. 484.

A letter written by the defendant when self-disserving is prima facie evidence against him : Wilkins v. Burton, 5 Vt. 76 ; Robertson v. Ephraim, 18 Tex. 118 ; Com. v. Tuckerman, 10 Gray, 173.

To exclude a voluntary confession of guilt, some inducement must be held out to prompt to falsehood, and of this the trial court must be the judge in the first instance and their ruling will be set aside only for manifest error : Fife v. Com., 29 Pa. 429 ; Com. v. Johnson, 162 Pa. 63.

OPINION BY MR. JUSTICE MITCHELL, May 16, 1898 :

The assignments of error are based on the refusal to strike out the testimony of Gertrude Taylor, and of the two deputy sheriffs, as to what the prisoner said in the interview with the girl, and on the admission of the prisoner's letter to her. The only objection is that the commonwealth obtained the evi-

dence· by an artifice which the prisoner did not anticipate or suspect. There is nothing substantial in this argument. The means by which the commonwealth obtains its evidence must vary with the circumstances of each case. In dealing with crime, nicety of method and considerations of delicacy must often give way to necessity. If the rule were otherwise, the testimony of accomplices, and even of detectives, would seldom be admissible, and crime which works in the dark would go unpunished.

The conversation between the prisoner and Gertrude Taylor was of an incriminating character, amounting practically to a confession, and we may concede that its admissibility is to be determined by the same rule. If it had been accidentally overheard, or his letter had been carelessly dropped by her and found by the sheriff, there could have been no objection to the use of them by the commonwealth. But there is nothing in the circumstances to produce a different result. The prisoner has no right to object unless the evidence was cajoled or forced from him by inducements or threats from those whose authority over him would make their promises or threats equivalent to duress. There was no such element here. Both the interview and the letter were the prisoner's voluntary act on his own initiative, and for his own purpose. Neither his hopes nor his fears were raised by any act of the sheriff. In Com. v. Smith, 119 Mass. 305, the prisoner, a girl of fourteen, made a confession to the officers who had her in custody. The judge at the trial ruled that "mere fear on the part of the defendant did not render the confession incompetent unless induced by some improper conduct on the part of the officers," and this was affirmed, the court saying: "To avoid the effect of this confession, the hope or fear which led the defendant to confess facts unfavorable to her must be induced by the threats, promises or conduct of the officers." And in Wharton on Criminal Evidence, sec. 644, it is said, citing cases: "Nor is it fatal to the admissibility of such a letter that it was in answer to a letter meant as a trap." "Though it is necessary to the admissibility of a confession that it should have been voluntarily made, that is, that it should have been made without the appliances of hope or fear from persons having authority; yet it is not necessary that it should have been the prisoner's own spontaneous act. It will be

received, though it were induced by spiritual exhortations, whether of a clergyman or of any other person ; or by a solemn promise of secrecy even confirmed by an oath ; . . . . or by any deception practised on the prisoner, or false representation made to him for that purpose, provided there is no reason to suppose that the inducement held out was calculated to produce any untrue confession, which is the main point to be considered : " 1 Greenleaf on Ev. par. 229. " A confession procured by artifice is not for that reason inadmissible unless the artifice used was calculated to produce an untrue confession : " 3 Am. & Eng. Ency. of Law, tit. Confessions, sec. 5. The subject was very carefully considered in a noted case somewhat analogous to the present: Com. v. Hanlon, 8 Phila. 423. The prisoner there, being charged with murder, was put in the same cell with a criminal named Dunn, for the purpose of obtaining, if possible, evidence to convict. At the trial Dunn's testimony as to a confession made by the prisoner was admitted, and upon it the latter was convicted and executed. The trial was presided over by a judge of great experience in criminal cases, the late Judge LUDLOW, assisted by Judge BREWSTER, and in the former's opinion refusing a new trial, he states that the result of their examination of the subject was concurred in by their colleagues, the late president Judge ALLISON and Judge PAXSON, subsequently chief justice of this Court. The rule as stated by these authorities is far stronger than is required to sustain the present case.

In regard to the admission of the prisoner's letter, we have an authority directly in point in Rex v. Derrington, 2 C. & P. 418. A prisoner gave a letter to a turnkey under promise that it should be posted, but the turnkey gave it to the prosecutor. Baron GARROW held that it was admissible, saying the only cases where what a prisoner says or writes is not evidence are, first, " where he is induced to make any confession in consequence of the prosecutor, etc., holding out any threat or promise to induce him to confess ; and secondly, where the communication is privileged as being made to his counsel or attorney."

By the well-settled rules therefore, the evidence was properly received.

Judgment affirmed and record remitted for purpose of execution.