## White v. Commonwealth.

Dec. 4, 1945.

Don A. Ward for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant and Willard Johnson were charged with robbery, committed by forcibly taking money from Willie Holland. Upon motion for severance the Commonwealth elected to try White, the trial resulting in a verdict of guilty with imprisonment for two years. On appeal it is contended that (1) the court erred in overruling motion for continuance "after he had been brought into the presence of the jury, handcuffed to his co-defendant Johnson;" (2) in permitting a Commonwealth's witness to remain in the courtroom during the trial after separation, over objection of appellant; (3) in allowing introduction of incompetent evidence by the Commonwealth, and in not allowing introduction of competent evidence offered by appellant; (4) in permitting the Commonwealth to recall the prosecuting witness, and lastly in failure to give the whole law of the case.

Before taking up other grounds we shall dispose of grounds 1 and 2. In the bill of exceptions it is shown that the attorney for defendants filed motion for continuance "because the defendants were brought before the jury handcuffed with a chain." In response to this

ground set up in motion for new trial, without affidavit or proof, the Commonwealth's attorney denied that the defendant was brought before the jury handcuffed; that at no time did the jurors or any one of them see the defendant handcuffed. The trial judge stated that when the docket was called the two defendants came from a back room and were not handcuffed. Later, after a trial of another case, the case against these defendants was called, and both came into the courtroom and sat at the defense table, and were not handcuffed. The jury was then called and the case proceeded to trial. There appears no denial of these observations, and there is nothing to show, as is suggested in appellant's brief, that the defendants were brought through the courtroom to a back room before "the jurors who were to try him." Under the facts shown the court correctly declined to continue the case.

The next objection is that after the separation rule had been applied, the court permitted the jailer to remain in the courtroom; he was later called as a witness for the Commonwealth. It appears as a ground for new trial that appellant objected to the court's allowing the jailer to remain in the courtroom after rule was made, but no objection was made to the testimony as a whole because of the fact. However, had proper objection been made and exception saved, we should hold no prejudice. The exclusion of a witness is controlled by section 601, Civil Code of Practice, and in construing it we have held that we will not reverse unless it appears that the court abused discretion in his ruling. Robertson v. Commonwealth, 275 Ky. 8, 120 S. W. 2d 680, 684.

It is complained that appellant was prejudiced because after the Commonwealth had closed, Holland was recalled and asked several questions, one perhaps material. Upon survey of that testimony it seems that in part it was more favorable to appellant than to the Commonwealth. However, the law is that the court may, for the "extraction of the truth as may be," exercise his discretion. Civil Code of Practice, section 593, Eaton v. Commonwealth, 230 Ky. 250, 19 S. W. 2d 218; we will not reverse unless we find an abuse of discretion.

The proof, which as to the act is circumstantial clearly connects the defendants with the robbery of Holland, an ex-service man who had been discharged after active

overseas duty, on the 17th of June 1945, and was on the way to his home in Clay County. He had stopped over in Hazard where he met up with a soldier friend, and according to Holland they had celebrated to some extent. Holland had a service pay check for $112.92 which he cashed at the post office about 4:00 p. m., placing the currency in his billfold. Later he met still another friend and they did some drinking, winding up about 7:00 p. m. at the "White Spot," where after a few drinks Holland "passed out." Police officers were called around eight o'clock and took Holland to the city jail. The officers took his discharge papers, but Holland told them and the jailer he could take care of his money. He was first placed in a room set apart for women prisoners. At about 8:30 the same officers arrested White and Johnson on a drunken charge and took them to jail where they were placed in another room at the back of the jail with another prisoner, Baker. Later the officers arrested a Begley girl; took her to jail and Holland was carried from the women's department to the rear room with the men prisoners. Holland knew nothing until he awoke the next morning with an empty billfold and his lapel discharge button. He thought his money had been taken by the jail authorities, but learned this was not so.

The jailer upon learning of the loss suspected some of the prisoners, and in the presence of others began a search which resulted in finding in a cuff of White's trousers two $20 bills, a $20 bill in Johnson's shirt, five one dollar bills in his trousers' pocket, and 55 cents in change. Holland had testified that when cashing his check he had a one dollar bill in his billfold; he had received for his check five twenty dollar bills, one ten and two ones, and 92 cents in coin. Later on the jailer got the Begley girl to agree to try to locate the balance of the money, and she testified that by some ruse she got the two, or one of them, to tell her that the money had been put into a slit in a mattress. The two had been taken from the rear room and the girl placed in there. She says they agreed to give her half the money. She located two twenty dollar bills and turned them over to the jailer or his helper.

Going back a little, the jailer testified that when Johnson and White were brought to jail they were given strict searches. White had an empty billfold and some

tobacco; Johnson had $1.45 in change, a hotel key and a bus ticket. Either White or Johnson had paid from a ten dollar bill for several half pints of whiskey which had been passed through a window of the jail. The testimony of the jailer was corroborated on the different phases by the chief of police, the jailer's assistant, the Begley girl and others.

White testified that on the day in question he met up with Johnson whom he had known in the penitentiary back in 1943; they went to Johnson's room in a hotel and drank some liquor. The two went out on the street and were arrested and taken to jail. He describes where they were placed in jail; he admits that the jailer went through "what you would not call a search." He says that Johnson had given him two twenty dollar bills, which he placed in the cuff of his pants, because he was afraid of losing it in jail. He denied that he put any money in the mattress. He also said Johnson had bills in his watch pocket; and the jailer had "searched him about like he did me."

On cross-examination he said he had paid out $9 for whiskey, which about "busted" him; he admitted that after the girl had been changed back to the room where the men prisoners had been during the night, he offered the jail helper $2 to let him go back to the room, but not for the purpose of recovering any money.

Johnson testified that he came to Hazard on the 18th and met up with White; he had "around" eighty or ninety dollars. He went to the hotel and got $5 more from a telegraph boy. He tells of the arrest at about 8:30, and says the search at the jail consisted in "patting pockets." He says he gave White two twenty dollar bills, because White had told him that the "people up there will take your money; they take your money after you go to sleep, and don't give it back; he was going to hide it for me to pay our fine with." He said he left $5 in his trousers' pocket so "they would think that was all I had;" the rest he put in his watch pocket. He and White denied that they had taken any of the soldier's money.

The hotel porter testified that Johnson registered on Sunday; he had a twenty dollar bill when he registered, and paid for three nights' lodging, but not out of the twenty dollar bill. The manager of the hotel saw John-

son check in and pay $4.25 for three nights' lodging out of a twenty dollar bill. A taxi driver testified that he had carried White to some point on Monday or Tuesday, and he had paid his dollar fare out of a twenty dollar bill. He had "a great big roll of bills and another twenty or two wadded up in his hand." This closed the testimony for the defense.

Appellant complains that the court permitted the Commonwealth to prove that Holland had been in the service, and had served overseas, which testimony would "likely influence sympathy for the Commonwealth, especially when this country is at War." These questions were not pressed or emphasized. However, admitting that a part of the testimony should have been excluded, it was not prejudicial. We had the question presented in Roberts v. Commonwealth, Ky., 191 S. W. 2d 242, and we said that while answers to such questions might tend to create sympathy, and were irrelevant and incompetent, they were not prejudicial. The verdict of the jury would not indicate bias or prejudice. Counsel complains that Holland when asked if he had any conversation with the defendants about the loss of his money, said "No, but I said to Henry Baker—," and the court ruled that he should not continue. We find no objection at this point, and are unable to tell from appellant's brief why he is complaining. The same may be said of the court's stopping Commonwealth's counsel when asking the witness Holland to repeat the description of the money he had lost.

It is complained that the jailer was permitted to tell of a conversation he had heard between the two men who were in the cell, the jailer outside listening through a crack in the wall, but not seeing or knowing which of the two was talking. He heard one say, "They haven't found it all yet," and the other replied, "No, but they will." The only objection advanced is that the jailer could not tell which was which. He made it clear that Johnson and White were the only persons in the cell. We are unable to find any ground upon which we could hold this evidence incompetent. The court, looking upon this evidence as confessory, was particular to ascertain that the statements were voluntary. Under all the circumstances the evidence was competent. Eaton v. Commonwealth, 235 Ky. 466, 31 S. W. 2d 718.

We find in appellant's brief objections to four or five other bits of evidence which were objected to as being admissible and refused on the one hand, or non-admissible but allowed, on the other. In none of these are we advised of reasons why the evidence was incompetent or prejudicial, or any supporting authority. We have taken the trouble to turn to the portions to which objections (in some instances) were made, but find none prejudical, and in every instance the rulings were correct.

The last contention is that the court did not give all the law of the case. Counsel ingenuously argues that under the proof it was not shown that "White ever got any money from Holland. The two men were indicted together, and it is possible that one or the other only got part of it from the other, or that Johnson got the money and later divided it with appellant, or that while Holland was in jail he lost his billfold and one of the co-defendants found it and took the money. Where there are several conclusions to be drawn it is the duty of the court to give instructions covering all possibilities." Following this statement it is urged that the court should have instructed on the law applicable to an accessory after the fact. KRS 431.170. This statute does not undertake to define the term "accessory after the fact," but from a reading of the section it means one who "aids or assists the offender, after the commission of a felony, to avoid or escape * * * punishment." Under the common law an accessory after the fact was subject to the same punishment as the principal, 4 Blackstone p. 449; our statute reduced the offense to a misdemeanor. Counsel points us to Able v. Commonwealth, 68 Ky. 698, as being authority for his contention. It is true that in the syllabus it is written that the act of receiving property knowing it to be stolen, makes the receiver an accessory after the fact. This was the common law, but that statement was not at all pertinent, since the question there was whether the receiver could have been convicted under an indictment charging him as principal. The court pointed out that the common law distinction between principals and accessories had not been abolished by statute, as is the case at the present time, and statutes have provided penalty for knowingly receiving stolen property. Appellant denied having received any of Holland's money from Johnson or otherwise. It may be noted, whether covering the

point raised here or not the Able case was overruled in Tramwill v. Commonwealth, 148 Ky. 624, 625, 147 S. W. 36, 37, 42 L. R. A., N. S., 207. We cannot by any reasoning under the facts presented reach the conclusion that White was an accessory after the fact; if aiding or abetting he was subject to the same punishment as the principal. Simpson v. Commonwealth, 293 Ky. 831, 170 S. W. 2d 869. The court gave all the law of the case, and as we view the whole record, afforded the accused a fair trial.

Judgment affirmed.