[Crim. No. 1605.   Fourth Dist.   Nov. 16, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. IRA LEE
MORGAN, Defendant and Appellant.

Magnus and Carver and William A. Carver for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant appeals from a judgment entered after a jury verdict finding him guilty of robbery in the second degree (Pen. Code, § 211).

The evidence discloses that on January 24, 1961, at approximately 8:45 in the evening, the Bakersfield office of Western Union was robbed of $107. The clerk from whom the money was taken identified the defendant as the robber. There was evidence that shortly before the robbery defendant was without funds and that during the six-hour interval between the robbery and his arrest he lost approximately $102 playing cards. Defendant asked one of the participants in these card games to tell the police that defendant had lost only $10 or $15 during the evening. A coat answering the description of the coat worn by the robber was found under the bed in a hotel room the defendant had rented after using a fictitious name.

Before the trial, the defendant, his counsel and the district attorney entered into a written stipulation which provided that the results of a lie-detector examination of the defendant could be received in evidence at defendant's trial. At the trial, the polygraph examiner testified that in his opinion the defendant committed the robbery and that he placed his jacket under the bed in his hotel room.

Defendant testified that he was watching television in the lobby of a hotel at the time of the robbery. He claimed to have loaned his coat to a man named Don just before the robbery. Defendant said that he had $100 when he came to Bakersfield and that he received $50 from his sister Hazel in a letter on the day of the robbery. He denied signing the registration at the hotel and admitted a prior conviction for robbery. On cross-examination, he admitted that his sister, Mrs. Burkett, visited him at the jail and that he had asked her if she remembered sending him money six months ago. He denied asking her to testify that she had sent him money at about the date of the robbery.

In rebuttal, Lieutenant Munding of the Kern County Sheriff's Office produced a recording which was made on March

14, 1961, the day before the trial began. This recording was of a conversation between the defendant and his sister, Laura Burkett. Defendant objected to the introduction of this recording into evidence and the court edited out several portions which it deemed irrelevant and took testimony regarding the circumstances under which the recording was obtained. Thereupon, the court received in evidence a portion of the recording, in which defendant made several statements which were damaging to his case.

In order that this problem not be confused with "wiretapping," a clear picture of what occurred is necessary. The county, at its own expense, installed a complete intercommunication system in the jail, this system being independent of any public utility system. As a part of this system, there are 45 "visiting" telephones. In the instant case, defendant was in booth 14, separated from his sister by a glass partition. They could see each other but could not pass any physical objects back and forth. For voice communication between them, a telephone which was part of the jail's privately installed and maintained intercommunication system was provided. The recording equipment is installed in such a way that no special connections with any outside public system are necessary to record a conversation. When the jail officials desire to record a conversation, the recorder operator is informed as to which telephone is being used and he adjusts a few dials which start the recording machine and enable it to record the particular conversation.

All of defendant's contentions on this appeal are based upon the proposition that it was illegal to record the telephone conversation between defendant and his sister and that the recording should not have been received in evidence. ▮▮ Defendant's first contention is that the electronic recording here conducted constituted an illegal search and seizure. This contention is without merit. In *Olmstead* v. *United States*, 277 U. S. 438 [48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376], it was held that electronic eavesdropping conducted without physical trespass does not constitute an illegal search and seizure under the Fourth Amendment. This rule was reiterated in *Goldman* v. *United States*, 316 U. S. 129 [62 S.Ct. 993, 86 L.Ed. 1322], and was followed in *People* v. *Anderson*, 145 Cal.App.2d 201 [302 P.2d 358], and *People* v. *Graff*, 144 Cal.App.2d 199 [300 P.2d 837]. *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513, holds that if wiretap or eavesdropping equipment is installed during an illegal entry or trespass, the Fourth

Amendment has been violated and the evidence must be excluded. Here, there was nothing approaching a trespass. The county merely used its own wires.

Defendant also contends that the conduct of the officers here constituted illegal wiretapping under the Federal Communications Act (47 U.S.C. § 605), which provides that: ". . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . ."

In *Weiss* v. *United States*, 308 U. S. 321 [60 S.Ct. 269, 84 L.Ed. 298], it was held that the act applied to intrastate as well as interstate communications. The court noted that the interceptor could not distinguish between the two types of communication and would listen to both. To protect the interstate communications from interception, it was necessary to extend the prohibition to intrastate communications where the equipment was capable of being used to convey both types of messages. See also *Benanti* v. *United States*, 355 U. S. 96 [78 S.Ct. 155, 2 L.Ed.2d 126]. However, the present case involves less than the usual intrastate message. This telephone call was conveyed a few feet over a communications system which was entirely contained within the jail and which was not connected to ordinary telephone lines. Its telephones could not be used to convey messages outside the building. The Federal Communications Act was not intended to apply to a telephone system entirely within the walls of a jail operated by a local governmental agency.

Defendant also contends that the recording of the conversation was an invasion of his privacy and therefore unlawful. We are unable to see any merit in this argument. A man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in free society. His lack of privacy is a necessary adjunct to his imprisonment. As the court said in *Davis* v. *Superior Court*, 175 Cal.App.2d 8, 20 [345 P.2d 513] : ''To censor and in certain instances to forbid communication to and from a prison is inherent in its administration. Such authority is necessary to protect against escape.''

Officials in charge of prisoners awaiting trial may censor their mail, regulate communications between them and outsiders and under certain circumstances forbid communications

between such prisoners and certain classes of visitors. (Pen. Code, § 4570; *Akamine* v. *Murphy*, 108 Cal.App.2d 294 [238 P.2d 606]; *Davis* v. *Superior Court, supra*, 175 Cal.App.2d 8.)

In *State* v. *Giardina*, 27 N. J. 313 [142 A.2d 609], the defendants were charged with conspiracy to steal property from a leather company which employed one of them. The Supreme Court of New Jersey held that the company's switchboard operator was properly permitted to testify about conversations which she had listened to at the switchboard. These conversations were between the conspirators inside the plant and those outside the plant. The court said: ". . . a criminal statute should not be invoked in defiance of the common sense of a situation. We find it difficult to believe that Congress intended to assure privacy to conspirators brazenly employing a subscriber's facilities to pillage him. Congress could hardly have intended a sanctuary for criminals within the home or plant of their victim."

Statements made by prisoners and overheard by eavesdroppers deliberately placed by the prosecution so that they could overhear what was said have been held admissible in evidence. (*People* v. *Ah Fook*, 64 Cal. 380 [1 P. 347]; *White* v. *Commonwealth*, 301 Ky. 228 [191 S.W.2d 244]; *Commonwealth* v. *Goodwin*, 186 Pa.St. 218 [40 A. 412]; 20 Am.Jur. sec. 400, p. 361.) We are unable to find any impropriety in the obtaining and use of this evidence by the district attorney. Defendant's remaining contentions are without merit.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 9, 1962.