[Crim. No. 6039. First Dist., Div. One. July 26, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM RUSSELL MILLER, JR., Defendant and Appellant.

Ward A. Smith for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci, Anthony A. Cuomo and Ronald Kearney, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction of second degree burglary in violation of Penal Code section 459.

## The Record

At approximately midnight on June 6, 1966 Officers William Ambrose and Daniel O'Connor of the Concord Police Department arrived at the Bel Air Pharmacy in Concord in response to a silent burglar alarm at police headquarters. Upon arriving at the pharmacy, Ambrose examined the front and back doors and all the windows of the store and observed that they were all unbroken and secured. Meanwhile O'Connor examined the roof of the building and discovered that a hole had been drilled in the roof. At this time the officers were met by Ernest Black, a co-owner of the establishment. Upon his arrival Black noticed a man run from the rear door of the pharmacy into a nearby orchard. Thereafter the officers reexamined the rear door of the pharmacy and discovered that it was open. In addition the officers searched the orchard, where they found no person but discovered fresh cigarettes, footprints, and a flashlight. At this time Ambrose and Sergeant Burns, who had meanwhile arrived at the pharmacy, conducted an investigation of the interior of the premises, this investigation revealing the following: a brace and a small saw, which did not belong to the business, were found on the floor inside the rear door; a wicker basket and a brown paper bag, both containing drugs, were found on the floor; an open box marked "nar-

cotics'' was out of place on the counter; and plaster dust was observed on the floor and the merchandise just below the hole which had been cut in the ceiling. Finally, the officers found an automobile registered to a Robert Waterman, Jr. parked near the back door of the pharmacy with its front end adjacent to the water pipes which lead to the roof. The ignition keys had been left in the car and in addition the officers discovered some tools which appeared to be burglar tools on the floor of the car.

Subsequently both Waterman and defendant were arrested and placed in a jail cell together. While they were in this cell they had a conversation which was monitored by Burns and subsequently tape-recorded. The contents of this conversation, according to the tape recording itself and the testimony of Burns, who heard the conversation as it was transmitted through the monitor, was as follows: Waterman informed defendant that the former had confessed to the burglary at the pharmacy and in so doing had implicated defendant, and that his reason for confessing was to prevent the prosecution of his girl friend, who had been arrested for the crime. Defendant replied that Waterman need not have confessed to protect his girl friend since she had been released; that if defendant were released he could effect bail for Waterman; that Waterman should not have implicated defendant whose involvement in the burglary could not otherwise have been proven, there being no fingerprints and neither defendant nor Waterman having been caught inside the store; and that Waterman should have maintained his original explanation to the effect that his automobile had been stolen. Finally defendant said that ''he thought it was a beautiful job except for the one mistake that they had made,'' but that he had feared for Waterman's life because while defendant was in the orchard behind the pharmacy he had heard shots and thought that Waterman had been shot.

Waterman testified that he and defendant had broken into and burglarized the Bel Air Pharmacy on June 6, 1966. As to the manner in which they committed the burglary Waterman testified as follows: He and defendant cut a hole in the roof of the pharmacy, defendant entering through the hole and then opening the back door to permit Waterman to enter; defendant and Waterman then searched for drugs, placing them in a paper bag and a basket; and when the police arrived Waterman warned defendant and then ran out of the pharmacy.

In addition to the foregoing, the record discloses other per-

tinent facts which we will discuss in conjunction with defendant's contentions on appeal.

## Contentions

Defendant's contentions on appeal relate to alleged error on the part of the trial court in admitting evidence as to the contents of the aforementioned conversation which defendant had with Waterman in the jail cell. Defendant argues that since the only evidence corroboratnig Waterman's testimony as to defendant's involvement in the burglary of the pharmacy consisted of these statements in the jail cell, such evidence, if improperly admitted, leaves the testimony of the accomplice Waterman totally uncorroborated, and, therefore, pursuant to the provisions of Penal Code section 1111 the conviction cannot stand.[1] In support of this argument as to the inadmissibility of the conversation between defendant and Waterman defendant contends, first, that he was illegally arrested and that therefore the jail cell conversation was the product of this illegal arrest; and secondly, that the confession which Waterman made to the police at the time of his arrest was obtained because the police did not advise Waterman of his rights as required by *Miranda* v. *Arizona*, 384 U.S. 436 [161 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] and that "the unlawfully obtained confession was used to obtain . . . [defendant's] admissions in the jail cell . . . ."

The facts relating to defendant's arrest and to the eliciting by the police of a confession from Waterman are as follows: On June 6, 1966 Waterman telephoned the Concord Police Department and reported that his car had been stolen. In response to this telephone call Burns went to Waterman's apartment and asked Waterman to come to the police station to discuss the alleged theft of his car. Waterman then accompanied Burns to the police station where the former was questioned and subsequently arrested. Two days later, on June 8, 1966, from approximately 5 p.m. to 8 p.m., Burns interrogated Waterman and obtained a confession from the latter that he had burglarized the Bel Air Pharmacy. However, prior to this conversation, according to Burns' testimony, Burns had advised Waterman on several occasions of his right to counsel and his right to remain silent.

Meanwhile Burns had talked separately to Robert Water-

---

[1]Penal Code section 1111, in pertinent part, provides as follows: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; . . ."

man's brother, Steven Waterman, and to Steven's roommate, Mr. Buckingham, both of whom told Burns that Robert Waterman had come to their apartment prior to his arrest and had told them separately that he and defendant had burglarized the Bel Air Pharmacy and in the process recounted the details of the crime concerning their entry by means of a hole in the roof and their escape to an orchard in the rear of the pharmacy. Based upon this information defendant was arrested by Officer McLendon of the Concord Police Department at approximately 7 p.m. on June 8, 1966. [2]

### Legality of Arrest

Concerning defendant's contention that his arrest was illegal and that therefore the jail cell conversation which he had with Waterman and which resulted in defendant's making admissions concerning the instant charge should have been excluded from evidence because it was the product of his illegal arrest, we are of the opinion that Officer McLendon, who arrested defendant, had probable cause to make this arrest and that therefore defendant's subsequent conversation with Waterman was properly admitted into evidence.

---

[2]No contention is made that the evidence of the tape recording made by the police of the conversation between Waterman and defendant constituted a violation of Penal Code section 653j, which forbids the use of devices for eavesdropping or recording a confidential communication; nor was an objection on such ground or on the ground of any prohibition against electric eavesdropping interposed in the court below. (See *People* v. *Fontaine,* 237 Cal.App.2d 320, 329-332 [46 Cal.Rptr. 855].) It is well established, moreover, "that a jail shares none of the attributes of privacy of a home, an automobile, an office or a hotel room" (*Lanza* v. *New York,* 370 U.S. 139, 143 [8 L.Ed.2d 384, 387, 82 S.Ct. 1218]); that inmates of prisons do not have the usual array of federal and state constitutional rights guaranteed to nonincarcerated citizens (*Price* v. *Johnston,* 334 U.S. 266, 285 [92 L.Ed. 1356, 1369, 68 S.Ct. 1049]; *In re Ferguson,* 55 Cal.2d 663, 670-671 [12 Cal.Rptr. 753, 361 P.2d 417]; *Davis* v. *Superior Court,* 175 Cal.App.2d 8, 20 [345 P.2d 513]; *People* v. *Hernandez,* 229 Cal.App.2d 143, 149 [40 Cal.Rptr. 100]); and that prison authorities may subject inmates to intense surveillance and search unimpeded by Fourth Amendment barriers. (*Lanza* v. *New York, supra; People* v. *Hernandez, supra.*) In *People* v. *Morgan,* 197 Cal.App.2d 90, 92-94 [16 Cal.Rptr. 838] (cert. den. 370 U.S. 965 [8 L.Ed.2d 830, 82 S.Ct. 1606]) it was held that an electronic recording of conversation between a county jail prisoner and his sister was not an illegal search and seizure nor an unlawful invasion of the prisoner's privacy. The court stated as follows: "A man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in free society. His lack of privacy is a necessary adjunct to his imprisonment." (P. 93.) In *People* v. *Lopez,* 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16], it was held that "Except only insofar as concerns consultation with his attorney in a room designated for that purpose, a prisoner has no right of privacy in a jail."

In *People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal. Rptr. 492, 423 P.2d 564], the principles applicable to an arrest without a warrant were stated as follows: "A peace officer may arrest a person without a warrant '[w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, . . .' (Pen. Code, § 836). Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. [Citations.] The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made. [Citations.] Information obtained from others may be relied upon to show probable cause. [Citations.] Although information provided by a known informer of unproved reliability or by an anonymous informer is relevant on the issue of probable cause, an arrest ordinarily may not be based solely on such information, and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. [Citations.]'' (See also *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].) Such evidence may consist of substantial corroborative facts known or discovered by the police from sources other than such informant. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]; *People* v. *Talley, supra,* at pp. 836-837; *People* v. *Cedeno,* 218 Cal.App.2d 213, 219-220 [32 Cal.Rptr. 246]; *People* v. *Bates,* 163 Cal.App.2d 847, 851 [330 P.2d 102].)

 In the instant case the police had received information from Robert Waterman's brother and from a Mr. Buckingham that Waterman had told them that he and defendant had burglarized the Bel Air Pharmacy. Although the record does not indicate that these two individuals were known to the police as being reliable, the information which these two persons furnished the police was sufficiently corroborated so as to entitle the police to rely upon this information in arresting defendant. In the first place, Waterman's brother and Mr. Buckingham talked with the police separately and each gave similar information to the police. Secondly, the details of the information which these individuals furnished to the police coincided with the information which the police had obtained from their personal observations at the time of the burglary, namely, the fact that entry into the pharmacy had been gained

by the burglars by drilling a hole in the roof and that the burglars had escaped into an orchard at the rear of the pharmacy. Accordingly, since the information from Waterman's brother and Buckingham was sufficiently corroborated so that reliance thereon was reasonable, defendant's arrest was based on probable cause and was, therefore, legal. There is no merit, therefore, to the contention that defendant's jail cell conversation with Waterman was the product of an illegal arrest.

## The Miranda Rule

Defendant contends that his jail cell conversation was inadmissible because it was obtained as a result of Waterman's confession which, in turn, was illegally obtained because Waterman was not given all the warnings required by *Miranda* v. *Arizona, supra,* 384 U.S. 436. We need not go into a discussion of the *Miranda* requirements for several reasons. In the first place, we fail to see how defendant can complain that a confession was obtained from Waterman without advising the latter of his rights under the *Miranda* rule, as defendant has no standing to challenge the violation of Waterman's rights. (*People* v. *Varnum,* 66 Cal.2d 808, 812 [59 Cal.Rptr. 108, 427 P.2d 772].) The rationale of *Varnum* is that since the basis of the warnings required by *Miranda* is the privilege against self-incrimination, the rights protected by *Miranda* are violated only when the evidence obtained without the required warnings and waiver is introduced against the person whose questioning produced the evidence.

Moreover, the record in no way reveals that Waterman's confession was used to obtain defendant's jail cell admissions; nor does it reveal the contents of said confession, and, in particular, whether Waterman implicated defendant in the confession. The record does disclose, however, that defendant was arrested upon the corroborated information received from third persons and that he made the admissions which were introduced in evidence voluntarily and without being questioned or prodded by the police.

The fact that Waterman, while in the jail cell with defendant, told defendant that Waterman had confessed certainly does not make defendant's subsequent statements during this conversation the product of Waterman's confession. Even if it be assumed that defendant made his incriminating statements to Waterman solely because of Waterman's statement that he had confessed and implicated defendant, defendant's statements could only be considered to have been induced by Wa-

terman's statement that he had confessed rather than by the fact that Waterman had in fact confessed. And since Waterman apparently made this statement to defendant of his own volition and without police participation, it cannot be successfully urged that the incriminating statements which defendant made to Waterman in the jail cell were the product of Waterman's confession.

### Conclusion

Since we have concluded that the trial court did not err in admitting into evidence the tape recording of defendant's conversation with Waterman and Burns' testimony concerning the contents of this conversation, it is apparent that this conversation furnished adequate corroboration to Waterman's testimony and that, therefore, there is sufficient evidence in the record to support defendant's conviction.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.