[Crim. No. 3611. Fourth Dist., Div. Two. Nov. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS EUGENE BLAIR, Defendant and Appellant.

252

## COUNSEL

Joseph J. Storto, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Donald B. Marks, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MITCHELL, J. pro tem.**\*—The defendant was charged with: (a) robbery (Pen. Code, § 211), count I; (b) kidnaping (Pen. Code, § 209) for the purpose of robbery, count II; (c) kidnaping (Pen. Code, § 209) for the purpose of robbery, count III; and (d) receiving stolen property (Pen. Code, § 496), count IV. In a jury trial, defendant was found guilty on all four counts. The defendant appeals from the judgment and from the order denying his motion for a new trial. However, the order denying a new trial is nonappealable. (*People* v. *De Leon*, 236 Cal.App.2d 530, 533 [46 Cal.Rptr. 241]; Pen. Code, § 1237.)

The evidence disclosed that Mr. and Mrs. Susman were robbed, at their home, of currency and other valuables by an armed, masked man. The Susmans could not identify the robber. The stolen property was found by police in defendant's home or place of employment. Also found at defend-

---

\*Assigned by the Chairman of the Judicial Council.

ant's place of employment, were clothes matching the description of those worn by the robber.

Sergeant Wall, of the Palm Springs Police Department, testified to a conversation with defendant in which the latter stated that he had "thought about pulling it, [the robbery] but didn't," and that he knew about the robbery.

The defendant testified that he told Sergeant Wall that he thought about committing the robbery and talked to his brother about it but abandoned the idea after he got a job. Defendant stated he knew nothing of the stolen money and valuables found at his home and place of employment.

Defendant's brother, who had previously pleaded guilty to the crime, testified that he had committed the robbery and his brother had not participated in it. He explained that he placed the contraband in his brother's house and place of employment without his brother's knowledge. Apparently he was living in defendant's house at the time of the robbery.

A tape recording of a conversation between defendant and his brother, at the police station, was introduced into evidence. In the conversation defendant's brother indicated that he pulled the job to help defendant, who at the time of the robbery had his arm in a cast. Defendant made statements indicating his knowledge of the robbery. Most of his statements were an attempt to get his brother to take full blame for the robbery.

There was testimony of other witnesses that defendant had inquired regarding the amount of money Susmans kept around the house.

There was testimony that defendant had his right arm in a cast at the time of the robbery. Mr. Susman testified that the robber had held the gun in a "peculiar fashion"; that "[h]e was holding his arm without vibration, holding it real firm." Mrs. Susman also testified as to how "rigid" the robber held the gun.

Defendant's main argument is that the trial court erroneously admitted into evidence the tape recording of the conversation between his brother and himself.

The uncontradicted testimony of Sergeant Wall of the Palm Springs Police Department was that the defendant expressed a desire to talk to him; that upon being brought to his office the Sergeant informed the defendant of his *Miranda* rights; and that he asked defendant if he understood his rights. Defendant's counsel stipulated the officer gave a proper advisement.

The defendant then told the Sergeant that he knew about the robbery of which he and his brother had been charged—who had committed it and the

location of the stolen property. he wished to tell Sergeant Wall about it but wanted to first talk to his brother, who was also in custody. He was told that their conversation would be recorded. He was asked more than one time if his brother, knowing this, would talk to him about the robbery at all. The defendant replied that "he didn't know, all he could do was try [to get him to tell about it]."

The two brothers were ushered into an interrogation room in the police building where they talked. Their conversation was recorded. The defendant previously had asked Sergeant Wall about the existence of an attorney's room and was told that there was one. No request for the use of this room was made nor was defendant told that the interrogation room was an attorney's room. Defendant told his brother that the room where they were conversing was the attorney's room.

At the conclusion of the conference the defendant told Sergeant Wall that his brother had refused to cooperate and he [defendant] was going to deny the robbery.

During the presentation of the People's case, the tape was offered in evidence. The defendant objected on Fourth Amendment grounds, but the ruling thereon was deferred. After the defense had rested, the tape was received in evidence as a part of the prosecution's rebuttal and defendant's previous objection, which he renewed, was overruled. After the tape had been played and heard by the jury, the court instructed the jury as follows: "The tape recording admitted into evidence in this trial, and the conversation contained therein, were offered into evidence and received for the sole purpose of impeaching witnesses and is not to be considered by you as proof of any fact alluded to therein by either party to the conversation. I do not mean to imply by anything I have said that any witness was, in fact, impeached by such recording, but you are instructed that statements contained therein were offered and received only for that purpose."

### CONFIDENTIAL COMMUNICATION

█ Defendant argues that the receipt, in evidence, of the tape and its contents was prejudicially erroneous and violative of section 653j of the Penal Code. Although this section had been repealed prior to commission of the offense charged, in substance it was reenacted in Penal Code, section 632. Accordingly, we will treat defendant's argument as if it were based on section 632. That section, subdivision (d), provides: ". . . no evidence obtained as a result of eavesdropping upon or recording a confidential communication *in violation of this section* shall be admissible in any judicial . . . proceeding." (Italics added.)

Subdivision (c) of section 632 of the Penal Code describes and defines

"confidential communication" and specifically *excludes* a communication made under "circumstance(s) in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

Before admitting the tape in evidence the trial court satisfied itself that the circumstances were such that at least the defendant expected that the same was being recorded. This finding is supported by the uncontradicted testimony of Sergeant Wall that twice he told the defendant that any conversation between the defendant and his brother would be recorded.

Although the defendant indicated to his brother that the room where they conversed was an attorney's room, arguably implying their conversation would not be recorded, his brother is not challenging the admission of the tape recording. Moreover, Penal Code, section 633 exempts law enforcement officers from the operation of section 632 to the extent that they could lawfully overhear conversation prior to the enactment of section 632. This type of conversation could have been recorded prior to section 632. (*People* v. *Chandler,* 262 Cal.App.2d 350 [68 Cal.Rptr. 645]; *People* v. *Apodaca,* 252 Cal.App.2d 656 [60 Cal.Rptr. 782]; *People* v. *Morgan,* 197 Cal.App.2d 90 [16 Cal.Rptr. 838].) We find there was no violation of Penal Code, section 632.

## DECEPTIVE PRACTICE

Defendant suggests an issue of "deceptive practice" on the part of Sergeant Wall. This issue was presented to the trial court which found against the defendant. The finding is supported by the evidence.

Defendant argues that by not specifically telling him the room was not an attorney's room, Sergeant Wall illegally obtained the statements made by defendant. Where police are engaged in a process of interrogation lending itself to eliciting incriminating statements, the use of deception which induces confessions or admissions cannot be condoned. However, here the uncontradicted record shows that the defendant sought out the officer; expressed an intention of disclosing his information of the alleged robbery; requested permission to talk to his brother; and was twice told by the officer that all rooms in the jail are "bugged."

The officer was not "involved" in any effort to procure or induce any statement by the defendant. The fact that the defendant inquired about the existence of an attorney's room does not compel an inference that he was induced to believe that, in spite of the warning to the contrary, his conversation with his brother would not be monitored. He did not so claim while on the stand.

## Invasion of Privacy

Although it is inartfully pleaded, defendant also raises the argument of whether the tape recording invaded defendant's Fourth Amendment right of privacy.

■ It is clear that "[a] man detained in jail cannot reasonably expect to enjoy the privacy afforded to a person in free society. His lack of privacy is a necessary adjunct to his imprisonment." (*People* v. *Morgan,* 197 Cal.App.2d 90, 93 [16 Cal.Rptr. 838] [cert. den. 370 U.S. 965 [8 L.Ed.2d 830, 82 S.Ct. 1606]]; *People* v. *Lopez,* 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Chandler,* 262 Cal.App.2d 350, 355 [68 Cal.Rptr. 645]; *Lanza* v. *New York,* 370 U.S. 139, 143 [8 L.Ed.2d 384, 387, 82 S.Ct. 1218].)

However, it is conceivable that in a given case the police might make representations to even an incarcerated defendant that would cause him to have a right of privacy. As the Supreme Court stated in *Katz* v. *United States,* 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507, 511], "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

■ In the instant case defendant was twice told that the rooms in the jail were "bugged." He was asked if his brother would talk to him in spite of this. Although defendant inquired about an attorney's room, no representation was made that where he was taken was such nor did he ask whether it was an attorney's room. Accordingly, we find the evidence insufficient to demonstrate the defendant had an expectation of privacy. Absent some affirmative representations to the contrary, it is unreasonable that a criminal defendant should have such an expectation when incarcerated in jail. Thus, there was no violation of defendant's Fourth Amendment rights.

## Conspiracy

■ Defendant's final argument is that, since there was no evidence to justify a jury finding defendant to be the actual perpetrator of the crime, the only way the verdict can be upheld is on a conspiracy theory. He argues the evidence of a conspiracy to be insufficient. Inasmuch as defendant was not charged with conspiracy, defendant's argument is specious. Defendant's conviction may only be upheld if there was sufficient evidence he was the perpetrator or an aider or abettor in the commission of the crime. Thus, we will examine the evidence as to whether it was sufficient on these points.

■ Of course the taped conversation was introduced for the limited

purpose of impeaching defendant's brother and the jury was so instructed. (*People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111].) The defendant did not actually say anything of an incriminatory nature to his brother. Thus, the substantive evidence against defendant may be summarized as follows: that all the stolen property was found at defendant's home or place of business; that the clothing worn by the robber was found at defendant's place of business; that defendant admitted thinking about pulling the robbery; that he talked with others about the amount of money the Susmans kept around the house; and that he had his arm in a cast at the time, the latter fact being relevant because of the firm way in which the robber held the gun.

■ While mere possession of stolen property standing alone is insufficient evidence of the possessor's guilt of robbery, "its quality is of such high degree that only slight corroborative proof of other inculpatory circumstances would warrant a conviction." (*People* v. *Alexander,* 78 Cal.App. 2d 954, 956-957 [178 P.2d 813]; *People* v. *Yates,* 165 Cal.App.2d 489, 493 [332 P.2d 314].)

■ In the instant case there was sufficient evidence of defendant's involvement. Not only did he possess stolen property but also clothing worn by the robber. In addition there was evidence of his involvement in the planning stage of the robbery and the statement made to the police that he knew of the robbery. We deem this to be the "slight corroborative proof" required and find the evidence to be sufficient that defendant was either the perpetrator or an aider and abettor in the perpetration of the robbery.

### KIDNAPING

■ The defendant was found guilty of the alleged kidnaping, without bodily injury, of the two victims of the robbery as charged in counts II and III. The evidence was that the movement of the victims was from their living room to their bedroom and closet and that this movement was merely incidental to the robbery and did not harm or increase the risk of harm to either of them. The ruling in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal. Rptr. 897, 459 P.2d 225], applied to cases still pending on direct review in *People* v. *Ross,* 276 Cal.App.2d 729, 736-737 [81 Cal.Rptr. 296], to the effect that such movements are not sufficient to sustain a conviction of kidnaping, compels a reversal as to counts II and III.

The judgment is affirmed as to count I and reversed at to counts II and III; the appeal from the order denying the motion for new trial is dismissed.

Kerrigan, Acting P. J., and Tamura, J., concurred.