145 N.J. Super. 330 (1976)
367 A.2d 920
STATE OF NEW JERSEY, PLAINTIFF,
v.
MICHAEL RYAN AND MARTIN TACCETTA, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 23, 1976.
*331 Mr. Glenn D. Goldberg, Assistant Prosecutor for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Nicholas E. Caprio for defendant Michael Ryan (Messrs. Goldman, Goldman and Caprio, attorneys).
Mr. Angelo R. Bianchi for defendant Martin Taccetta (Messrs. Bianchi and Colasante, attorneys).
MARZULLI, J.S.C.
The issue presented by defendants' motion to suppress is whether a conversation between codefendants, while incarcerated following their arrest and overheard via electronic surveillance, is admissible at their trial.
Defendants were arrested on February 5, 1976 and charged with murder. Following their transportation to the West *332 Orange Police Headquarters, they were placed in jail cells Nos. 3 and 5 located in the basement.
The jail contains eight cells, six located in the basement and the remaining two on the first floor. The officer in charge is positioned at a desk on the first floor. An electronic monitoring system exists to enable the officer to keep the cells secure. Comprised of a one-way intercom, the audio security system enables the officer to hear the prisoners through a receiver located at his desk. Through this monitoring he may be apprised of a possible impending security problem.
While on duty Sergeant Kelly and Detective Gilsenan heard over the monitoring system a conversation between the defendants. Their testimony as to this conversation is the subject of the motion to suppress. Defendants allege that the monitoring of their conversation was violative of their Fourth, Fifth and Sixth Amendment rights and their constitutional right of privacy.
This being a question of first impression in this State, guidance may be had from the few state courts which have been confronted with the issue presented, and from electronic surveillance cases in general.
In the initial electronic surveillance cases, premised upon Fourth Amendment grounds, the United States Supreme Court limited unreasonable searches and seizures to the physical trespass theory. Goldman v. U.S., 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); Olmstead v. U.S., 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928).
In Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967), however, the court abandoned this theory, overruling Goldman and Olmstead. Holding inadmissible tape recordings obtained through the placement of an electronic surveillance device on the outside of a public telephone booth where defendant was engaged in conversations, the court delineated a constitutional right of privacy. Defendant had "justifiably relied" upon his privacy by conversing in a closed telephone booth. Katz, supra at 353, 88 *333 S.Ct. at 512. Broadening the protection afforded by the Fourth Amendment, the court said:
For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Id. at 351, 88 S.Ct. at 511; emphasis supplied]
Although the United States Supreme Court has not specifically dealt with the issue of electronic surveillance of a prisoner, the oft-cited dictum in Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), has been persuasive.[1] The Lanza court asserted that a prisoner is not entitled to the same constitutional right of privacy as a nonincarcerated person:
But to say that a public jail is the equivalent of a man's "house" or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. * * * [I]t is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day.
[at 143, 82 S.Ct. at 1220 emphasis supplied]
Defendants argue that under Katz, prisoners should be afforded the same right of privacy as a nonincarcerated person. Despite the opportunity available to the Katz court to deal with this issue raised in Lanza, it declined to do so. By so doing the United States Supreme Court has allowed the Lanza dictum to stand.
The Katz court's language (at 351, 88 S.Ct. 507) that the Fourth Amendment "protects people, not places" in *334 areas "accessible to the public" dealt with nonincarcerated persons in public places where privacy is sought. If prisoners were sought to be brought under the rubric of the Fourth Amendment or of the right of privacy, the court surely would have so stated. See People v. Hiser, 267 Cal. App.2d 47, 72 Cal. Rptr. 906 (D. Ct. App. 1968).
Applying Lanza, the California courts have specifically decided the issue before this court. The California District Court of Appeal has consistently held that evidence of a prisoner's conversations with another person, overheard through an electronic monitoring device by a police officer, is admissible. People v. Finchum, 33 Cal. App.3d 787, 109 Cal. Rptr. 319 (1973); People v. Santos, 26 Cal. App.3d 397, 102 Cal. Rptr. 678 (1972); People v. Califano, 5 Cal. App.3d 476, 85 Cal. Rptr. 292 (1970). The court has relied upon the rationale that an incarcerated person must necessarily forfeit some rights of privacy enjoyed by those not incarcerated. See also, Commonwealth v. Dougherty, 343 Mass. 299, 178 N.E.2d 584 (Sup. Jud. Ct. 1961); Robinson v. State, 312 So.2d 15 (Miss. Sup. Ct. 1975); Thompson v. State, 298 P.2d 464 (Okl. Crim. Ct. 1956).
In Califano, supra, a monitored conversation between codefendants in adjoining cells was held admissible despite the monitoring being intentional with the view toward obtaining incriminating statements.
Following the lead of the California District Court of Appeals, the United States District Court for the Northern District of California, U.S. v. Hearst, 412 F. Supp. 888 (1976), and the United States Court of Appeals for the Ninth Circuit, U.S. v. Dawson, 516 F.2d 796 (1975); U.S. v. Hitchcock, 467 F.2d 1107 (1972), cert. den. 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973); Williams v. Nelson, 457 F.2d 376 (1972), have adopted a similar rule. Even where the monitoring was intentional, to obtain an inculpatory statement by a prisoner, the conversation has been held admissible. Williams v. Nelson, supra.
*335 A further rationale underlying the rule is premised upon the necessity of jail officials to use reasonable security measures to protect the prisoners and the jail environment. As the court asserted in Dawson, supra:
In this day of increased prison violence, the need to regulate prison life has become even more compelling than it previously was. Searches of prison cells (as in Hitchcock) may, at times be necessary for the protection of other prisoners as well as to prevent riot or escape; * * * [516 F.2d at 806]
Many courts have held that a jailer owes a duty to a prisoner to keep him safe and protect him from unnecessary harm  he must exercise reasonable and ordinary care for the life and health of the prisoner. Hall v. Midwest Bottled Gas Distributors, Inc., 532 S.W.2d 449 (Ky. Sup. Ct. 1975); Halloway v. Moser, 193, 185, 136 S.E. 375 (Sup. Ct. 1929); Dezort v. Village of Hinsdale, 35 Ill. App.3d 703, 342 N.E.2d 468 (App. Ct. 1976).
Electronic surveillance in the West Orange Jail is an essential prerequisite to the maintenance of security of the jail and its prisoners. Lawful incarceration necessitates the reasonable withdrawal from a prisoner of certain rights normally enjoyed by a person in free society. It is inherent in our penal system that a prisoner is not clothed with the usual array of guaranteed constitutional rights. It may be true that a prisoner does not leave his constitutional rights at the jailhouse gates, however, a prisoner does not enjoy the same right of privacy as nonincarcerated persons. Lack of privacy must be balanced against reasonable security in the jail. In the end, the scales must be tipped in favor of security.
Finally, defendants' reliance on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in that they did not knowingly waive their rights to remain silent or to counsel, is inapposite. The present case is not one dealing with custodial interrogation. There was no interrogation of defendants during the time their conversation was monitored; *336 rather, their statements were wholly voluntary. Recognizing that the Appellate Division has ruled that "interrogation * * * need not be of the question and answer type" for Miranda to apply, State v. Godfrey, 131 N.J. Super. 168 (1974), some effort by a law enforcement officer to elicit a response from a person in custody is required. In the instant case, however, no such action occurred.
Lanza and its progeny have established a sound rule. This rule and its rationale is adopted by this court.
Defendants' motion to suppress is hereby denied.
NOTES
[1] The Lanza decision treated the question of whether electronic surveillance of a prisoner constituted an illegal search and seizure for purposes of overturning a conviction for refusal to answer legislative committee inquiries, allegedly resulting from prison surveillance of conversations between appellant and his brother in a prison visitation room, and did not address itself to the evidentiary issue.